IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINANCIAL CASUALTY AND SURETY, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2509 |
| GEORGE ZOUVELOS and ANASTASIA MANCINI, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Financial Casualty and Surety, Inc. ("FCS") sued George Zouvelos and Anastasia Mancini for breach of contract and libel. After a two-day evidentiary hearing, the court granted FCS's application for a permanent injunction. (Docket Entry No. 29). In an order issued on October 25, 2011, the court ordered Zouvelos and Mancini to provide to FCS, within 14 days, "the bank account statements for the account holding collateral on FCS bonds, including copies of cancelled checks and deposit advice," and the "underlying documents relating to offsets for the accounts—for the indemnitors for which Mr. Zouvelos has made a specific payment of a particular amount and demanded that FCS pay a particular amount[.]" (Docket Entry No. 32, at 158–59). The court issued a written "Order on Permanent Injunction" on November 17, 2011. (Docket Entry No. 39). This Order directed Zouvelos and Mancini, within 14 days, to produce the following items to FCS:

> (1) Records of all collateral received by Defendants on FCS bonds from April 2008 to the present to include Defendant Name, Bond Power Number, Amount of Collateral Received, Indemnitor Name, Address, and Phone Number; and third-party invoices related to the bond collateral;

> (2) Defendants' bank-account statements fr[o]m April 2008 to the present for Chase Bank account number 733455836 and any other account Defendants have used during this period to hold collateral on FCS bonds, including copies of canceled checks and deposit advice; and
>
> (3) All vendors' invoices on which Defendants have relied to disburse FCS collateral from April 2008 to the present, or for which Defendants claim collateral held by FCS for Defendants should be paid at any time in the future.

(*Id.*, at 2). Fourteen days after the order issued from the bench at the injunction hearing was November 8. Fourteen days after the written order issued was December 1.

On November 15, three weeks after the injunction hearing, FCS moved for a show-cause hearing and to hold Zouvelos and Mancini in civil contempt.[1] (Docket Entry No. 36). FCS also moved for default. (Docket Entry No. 38). According to FCS, Zouvelos and Mancini should be found in contempt for failing: (1) to comply with the permanent injunction; (2) to file an answer; and (3) to comply with the Federal Rule of Civil Procedure 26(f) obligation to meet and confer. (Docket Entry No. 36, ¶¶ 3–4). These three reasons also evidence a failure to defend, meriting default. (Docket Entry No. 38, ¶ 5).

On December 2, 15 days after the written permanent injunction order, FCS filed a supplement to its motions for contempt and entry of default. (Docket Entry No. 41). FCS stated that nothing has happened since it filed the motions: Zouvelos and Mancini remain in noncompliance of the permanent injunction and they continue to disregard their obligations under the Federal Rules of Civil Procedure. (*Id.*, ¶¶ 2–3). On December 14, FCS filed a second supplement to its motions. (Docket Entry No. 42). According to FCS, on December 13 "Zouvelos produced a spreadsheet

---

[1] At the permanent injunction hearing, FCS did not assert that this court should grant the earlier motion to hold Zouvelos and Mancini in contempt for failing to comply with the preliminary injunction. This motion is superseded by FCS's "Verified First Amended Motion for Civil Contempt[,]" (Docket Entry No. 36), and is denied as moot.

2

which supposedly demonstrated the amount of collateral held by FCS on various bonds, the amount owed to indemnitors, and amounts paid to third-party vendors." (*Id.*, ¶ 1). This spreadsheet, however, did not contain any supporting documentation so as to be responsive to the order for "[a]ll vendors' invoices[.]" (*Id.*; *see also* Docket Entry No. 39, at 2). Zouvelos and Mancini have not responded.

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re FEMA Trailer Formaldehyde Prods. Liab.*, 401 F. App'x 877, 882 (5th Cir. 2010) (per curiam) (quoting *SEC v. First Fin. Grp. of Tex.*, 659 F.2d 660, 669 (5th Cir. 1981)); *cf. Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011) ("Civil contempt differs from criminal contempt in that it seeks only to 'coerc[e] the defendant to do' what a court previously ordered him to do." (quoting *Gomper v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911))). "[T]he elements of civil contempt are (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (internal quotation marks and emphasis omitted). The party moving for civil contempt bears the burden of establishing these elements by clear and convincing evidence. *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009). The Fifth Circuit "has consistently held that good faith is not a defense to a finding of civil contempt." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 735 n.25 (5th Cir. 2004) (collecting cases). But "[a] court may not impose punishment 'in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.'" *Turner*, 131 S. Ct. at 2516 (quoting *Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988)). "Upon a finding of contempt, the district court has broad

discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005).

Except "[i]n certain limited circumstances," a court may not *sua sponte* impose contempt sanctions. *United States S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010). As the Seventh Circuit recently explained:

> Due process requires that a person facing contempt sanctions be given adequate notice and fair opportunity to be heard in civil contempt proceedings. *See, e.g., Autotech Techs. LP v Integral Research & Dev. Corp.*, 499 F.3d 737, 746–47 (7th Cir. 2007). This minimally includes a requirement that "notice be given of the time and place of hearing" on the propriety of a contempt order. *Am. Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 519 (7th Cir. 1982); 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2465 (3d ed. 2008) ("[D]ue process does require that any civil contemnor be given certain basic procedural protections before being subject to any sanction: adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

*Hyatt*, 621 F.3d at 694.

This court's permanent injunction order required Zouvelos and Mancini to produce three sets of documents. The question is whether they have failed to comply with that order. The allegations, to which Zouvelos and Mancini have chosen not to respond, are as follows:

(1) As of November 8, when the documents were due to be produced to FCS, Zouvelos and Mancini had not produced any documents. (Docket Entry No. 36, ¶ 3).

(2) On November 11, three days after the production deadline, Zouvelos and Mancini "delivered copies of bank records, many of which are illegible and therefore worthless to FCS." (*Id.*)

(3) On December 13, over a month after the production deadline, Zouvelos produced a spreadsheet that is, at best, only partially responsive to the court's order that Zouvelos and Mancini produce "[r]ecords of all collateral received by Defendants on FCS bonds from April 2008 to the present[.]" (Docket Entry No. 39, at 2). The

4

spreadsheet neither includes nor explains the absence of "vendors' invoices," (*id.*), which were ordered produced so that FCS could confirm the amounts owed to the indemnitor. The need for such verification is illustrated by Zouvelos's inconsistent reporting, to FCS, of amounts owed. (*See* Docket Entry No. 42, ¶¶ 2–3 and supporting exhibits).

(4) Zouvelos and Mancini have not produced any vendors' invoices. (*See* Docket Entry No. 36, ¶ 3; Docket Entry No. 42, ¶¶ 2–3).

(5) Even if Zouvelos and Mancini believed that the documents were not due until December 1—fourteen days after the written permanent injunction order issued—they still have not produced the necessary documents. (*See* Docket Entry No. 41, ¶ 2; Docket Entry No. 42, ¶¶ 2–3).

(5) All of these failures are in addition to Zouvelos and Mancini's failure to comply with the preliminary injunction.[2] (Docket Entry No. 8).

The record shows clear and convincing evidence that Zouvelos and Mancini have failed to comply with the permanent injunction issued on November 17, 2011. The documents have not been produced, including documents apparently used to create the spreadsheet that was belatedly produced.

In addition to this noncompliance, Zouvelos and Mancini have failed to file an answer. FCS

---

[2] From the hearing:

> Q [counsel for FCS]. All right. So, is it your sworn testimony that you have never seen the temporary injunction order that this court issued in this case?
>
> A [Zouvelos]. I did not see it.
>
> The Court: Your lawyers didn't show it to you?
>
> The Witness: Not prior, Your Honor.
>
> The Court: I'm not asking about prior. How about since October 6th?
>
> The Witness: Absolutely.

(Docket Entry No. 32, at 91–92). In response to questions by counsel, Zouvelos testified that he produced records to the New York Department of Financial Services, but not FCS. (*Id.*, at 92). *See* NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, http://dfs.ny.gov (last visited Dec. 14, 2011) (explaining that, in October 2011, the New York State Banking Department and New York State Insurance Department merged into the newly created New York State Department of Financial Services).

filed its complaint on July 6, 2011. (Docket Entry No. 1). Service was effected on Zouvelos and Mancini on October 11. (Docket Entry Nos. 16–17). Zouvelos and Mancini filed a motion to dismiss three days later. (Docket Entry No. 20). The court denied that motion on the record during the first day of the permanent injunction hearing, October 24. (Docket Entry No. 28). Under Federal Rule of Civil Procedure 12(a), Zouvelos and Mancini had to file their answer within 14 days, or by November 7. *See* FED. R. CIV. P. 12(a)(4)(A). To date, no answer has been filed. FCS seeks entry of default.[3] No response has been filed to this motion. The propriety of this extreme remedy will be determined at the show-cause hearing. *See, e.g.*, *Washington v. M. Hanna Constr. Inc.*, 299 F. App'x 399, 400 (5th Cir. 2008) (per curiam) ("A default judgment is a 'drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 877 F.2d 274, 276 (5th Cir. 1989))).

A hearing is scheduled for **January 17, 2012**, at 10:00 a.m., in Courtroom 11-B.[4] Zouvelos and Mancini must show cause why they should not be held in civil contempt for failing to comply

---

[3] FCS also relies on Zouvelos and Mancini's failure to comply with Rule 26(f), which requires them to confer with FCS to draft and file a joint discovery and case management plan. (Docket Entry No. 36, ¶ 4). Failure to cooperate in discovery is punishable by Rule 37 sanctions. *See* FED. R. CIV. P. 37(f); *O'Neill v. AGWI Lines*, 74 F.3d 93, 95–96 (5th Cir. 1996). The rule limits sanctions for this type of violation to monetary relief:

> If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

FED. R. CIV. P. 37(f). By contrast, failure to obey a discovery order, including an order entered under Rule 26(f), may result in dismissal or default. *See* FED. R. CIV. P. 37(b)(2)(A)(v); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 302 (5th Cir. 2007) (per curiam). The court does not have unfettered discretion in issuing sanctions under Rule 37(b)(2). *See, e.g.*, *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

[4] In a December 15 e-mail to the court's case manager and copied to counsel for all parties, FCS's counsel asked that a hearing be held this month in order to avoid "interferen[ce] with FCS's ability to work with the New York Department of Insurance." Nothing in the e-mail nor the record shows that holding an immediate hearing is needed for FCS to work with the New York Department of Financial Services.

with the permanent injunction and why default should not be entered for their failure to answer.

SIGNED on December 15, 2011, at Houston, Texas.

                                          Lee H. Rosenthal
                                    United States District Judge