IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINANCIAL CASUALTY AND SURETY, INC. | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. H-11-2509 |
| GEORGE ZOUVELOS and ANASTASIA MANCINI, | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This is a commercial dispute involving bail bonds. The court assumes the parties' familiarity with the lengthy, and acrimonious, history. Four motions are currently pending:

- The defendants, George Zouvelos and Anastasia Mancini (collectively, "Zouvelos"), proceeding *pro se*, have again moved to transfer venue to the United States District Court for the Eastern District of New York. (Docket Entry No. 82). The plaintiff, Financial Casualty and Surety, Inc. ("FCS"), has responded. (Docket Entry No. 93).

- FCS has moved to dismiss Zouvelos's amended counterclaims for failure to state a claim. (Docket Entry No. 88). Zouvelos has responded by filing a second amended answer, which contains second amended counterclaims. (Docket Entry No. 91). This court treats that filing as a motion for leave to file second amended counterclaims.

- FCS has moved to compel the production of documents under Federal Rule of Civil Procedure 34 and disclosures under Rule 26. (Docket Entry No. 92). Zouvelos appears to have responded. (Docket Entry No. 97).

- FCS has moved for an order "compelling Defendants George Zouvelos and Anastasia Mancini to comply with Rule 5 of the Federal Rule[s] of Civil Procedure[.]" (Docket Entry No. 100).

Based on the motions and related filings, the extensive record, and the applicable law, this court grants the motion to transfer. The remaining motions—FCS's motion to dismiss the amended

counterclaims, Zouvelos's motion for leave to file second amended counterclaims, and FCS's motions to compel—are denied, but without prejudice to reassertion before the United States District Court for the Eastern District of New York.

The reasons for this ruling are explained below.

## I.   The Applicable Law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). A district court has "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (internal quotation marks omitted). The party seeking transfer must show that "the transferee venue is clearly more convenient[.]" *Id.* at 315. To determine "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice," a district court must consider both private and public interest factors. *Id.*

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (internal quotation marks, citations, and alterations omitted). These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *Id.* (internal quotation marks and alterations omitted).

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009) (citing cases); *see also Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." (quoting *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 774 (E.D. Tex. 2000))); 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed. 2007) ("Often cited as the most important factor in passing on a motion to transfer under Section 1404(a) of Title 28 of the United States Code, and the one most frequently mentioned by the courts, . . . is the convenience of witnesses, most particularly nonparty witnesses who are important to the resolution of the case."). What matters most is the relative convenience to nonparty witnesses, more so than party witnesses. *See Mid-Continent Cas. Co.*, 629 F. Supp. 2d at 762–63 (citing cases); *Frederick*, 558 F. Supp. 2d at 704; 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851. "The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant." *Frederick*, 558 F. Supp. 2d at 704 (quoting *Quicksilver, Inc. v. Academy Corp.*, No. Civ. A. 3:98-CV-1772R, 1998 WL 874929, at *2 (N.D. Tex. Dec. 3, 1998)). "When nearly all of the nonparty witnesses that will testify concerning disputed issues reside elsewhere, this factor weighs in favor of transferring the case." *Id.* Nevertheless, "although extremely important, the convenience of witnesses does not stand alone and must be weighed against the other relevant factors that typically are considered." 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851.

To determine the relative convenience to nonparty witnesses, a district court must consider

the content of their testimony. "[T]he movant must specifically identify the key witnesses and outline their testimony." *Mid-Continent Cas. Co.*, 629 F. Supp. 2d at 763 n.3. As explained by *Wright and Miller*:

> The courts also have been careful not to let a motion for transfer become "a battle of numbers." The party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover. The emphasis, as has been articulated by many courts, is properly on this showing rather than on which party can present a longer list of possible witnesses located in its preferred district. The focus on this point is a qualitative, not a quantitative one[.]

15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851 (internal footnotes omitted).

## II.   Analysis

Zouvelos previously moved to dismiss this case for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the Eastern District of New York. (Docket Entry No. 59). The court denied that motion during the hearing held on March 28, 2012. (Docket Entry No. 71). As to the motion to transfer, the court noted that Zouvelos had not identified those nonparty witnesses located in New York or the importance of those witnesses' testimony. (Docket Entry No. 75, at 8–9). The court allowed Zouvelos to file an amended motion to transfer venue by May 25. (Docket Entry No. 79).

Zouvelos did not file the motion to transfer until May 30. (Docket Entry No. 82). The motion is untimely, even if it was mailed on May 24 (the date on the document). (*Id.*, at 18). "The posting of papers addressed to the clerk's office does not constitute 'filing' under Rule 5(e). Unlike some state court rules the Federal Rules of Civil Procedure do not authorize filing to be accomplished by deposit of papers in the mail." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604–05

(7th Cir. 2006) (internal footnote omitted); *see also Lee v. Dallas Cnty. Bd. of Educ.*, 578 F.2d 1177, 1178 n.1 (5th Cir. 1978) (per curiam) ("[C]ompliance with a Filing requirement is not satisfied by Mailing the necessary papers within the allotted time."); *Scott v. U.S. Veteran's Admin.*, 749 F. Supp. 133, 135 (W.D. La. 1990) ("[C]ourts have consistently noted that filing court papers does not occur when they are mailed."). Instead, "[a] pleading is not filed with the court until it is actually received by the clerk, or by the court." *Meza v. Massanari*, 199 F.R.D. 573, 576 (S.D. Tex. 2001) (citing FED. R. CIV. P. 5(e) and *Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986)).

Even assuming that Zouvelos mailed the motion on May 24, 2012, it was not received by the Clerk of Court until May 30. The answer was not "filed," for purposes of Rule 5(d)(2), until that date. The court, however, will accept the late-filed motion. The delay was short, FCS will suffer no prejudice from the six-day delay, and FCS has not objected to the motion's timeliness.

Some of the background facts that bear on the transfer issue are undisputed. FCS is a Texas corporation located in Houston, licensed to underwrite bail bonds in New York and other states. Zouvelos is a licensed bail bondsman in New York, and his business—which he runs with his wife, Mancini—is located in New York. Between 2008 and 2010, FCS entered into four contractual agreements with Zouvelos and Mancini. These agreements authorized Zouvelos to issue bail bonds with FCS as the surety, with the industry-standard proviso that Zouvelos would indemnify FCS for all losses associated with the forfeiture of a bond. The agreements required Zouvelos to obtain collateral from an indemnitor for each bail bond issued, and to hold the collateral in a separate bank account with FCS named as trustee. After the bond's exoneration—that is, after the criminal defendant appeared at all required court dates—FCS's obligation as surety terminated, and Zouvelos

was required to return the collateral to the indemnitor. The agreements required Zouvelos to keep records related to each bond and granted FCS access to these records at its discretion. Finally, each of the agreements contained a forum-selection clause,[1] which states:

> At the discretion of Company, the Agreement is to be interpreted in accordance with the laws of the State of Texas, where Company is based, or with the laws of General Agent's home state. The parties hereto do hereby consent and stipulate to the jurisdiction (at the discretion of Company) of the courts in the State of Texas, County of Harris or of the General Agent's home state for any action brought under this Agreement.

(Docket Entry No. 80, Ex. B, ¶ 29).

This lawsuit arises out of Zouvelos's alleged mishandling of bail bonds underwritten by FCS. According to FCS, there is a shortage in Zouvelos's collateral account. FCS has repeatedly sought documents from Zouvelos that will show all deductions from collateral, including for payments to third-party vendors, in order to resolve. The parties have spent considerable time and effort — theirs and the court's—litigating the extent to which Zouvelos has responsive records available for production and whether he is willing to produce what he does have available. In addition to defending this lawsuit by FCS, Zouvelos has been under investigation by the New York State Department of Financial Services—also known by its former name, the New York State Insurance Department[2]—for matters apparently arising out of this alleged mishandling of bonds.[3] Beyond what is alleged in the complaint, (*see* Docket Entry No. 80, ¶ 11), and brief allusions to the investigation

---

[1] There are textual variations in the forum-selection clauses, all of which are *de minimis*.

[2] (*See* Docket Entry No. 44, at 5 n.2).

[3] Zouvelos had moved to stay these proceedings pending the outcome of the regulatory investigation. (*See* Docket Entry No. 74). The court denied that motion, in large part because FCS is not a party to that investigation. (Docket Entry No. 79).

made during court hearings, the details of that investigation are not in the record.

The parties' agreement contains a permissive forum-selection clause, under which the defendants consent to submit to the personal jurisdiction of courts located in Harris County, Texas. The clause, however, does not require that litigation over the agreement be in a Harris County court. The § 1404(a) analysis applies, with the forum-selection clause as a factor to be considered.

In the motion to transfer, Zouvelos argues that New York is clearly a more convenient forum because this is a New York dispute. Zouvelos argues as follows:

> Defendant does all of his business in New York, the defendant's collateral contracts which are claimed to be in evidence in this matter are New York contracts under New York law, all of the alleged transactions are located only in New York, most (if not all) of the witness[es] to give testimony are located in [N]ew York, and the cost to defendant to transport and lodge any witnesses from New York to Texas is completely prohibitive.

(Docket Entry No. 82, ¶ 11). Zouvelos has attached a lengthy "preliminary witness list" that he contends shows "the proof that thus far 90% of defendant's witnesses slated to be called upon are located in the state of New York[.]" (*Id.*, ¶ 20).

FCS vigorously attacks this list of over 60 potential witnesses as "unreliable, unverified, and intentionally misleading." (Docket Entry No. 93, ¶ 13). According to FCS, Zouvelos misleads this court by asserting that he intends to call witnesses to testify on topics about which they lack personal knowledge. In support, FCS has submitted the affidavit of Steve Krauss, who Zouvelos identified as an FCS bail-bond agent with knowledge of FCS bail-bond practices. Krauss denies such knowledge. He states that he is not an bail-bond agent for FCS, nor does he write bail for FCS. His experience with FCS is limited to acting as an indemnitor on contracts for FCS. (Docket Entry No. 93, Ex. C, ¶¶ 2, 7–8). Additionally, Krauss is only licensed to write bail in Pennsylvania. (*Id.*, ¶ 2).

7

He has spoken to Zouvelos by phone or communicated with him by email, but does not otherwise know him. (*Id.*, ¶ 3). Zouvelos has not spoken with him about testifying in this case. (*Id.*, ¶ 5). Indeed, Zouvelos testified that he had not spoken to most, if not all, of the potential witnesses he listed. (Docket Entry No. 93, Ex. B, at 167).

FCS also asserts that many of the witnesses Zouvelos lists will offer irrelevant testimony. According to FCS, no nonparty witness is necessary, because "[t]he main issues are documenting the deductions from the collateral account and the amount of bond forfeitures entered on bonds written by Zouvelos." (Docket Entry No. 93, Ex. A, ¶ 10). The first issue will be resolved by documents, and the second by court records FCS obtained. FCS does intend to call witnesses, but only its own officers or employees who have worked with Zouvelos's account and know about his bail-bond business, the process of bond forfeitures and exonerations on bail bonds written by Zouvelos, FCS's payments of collateral to Zouvelos's indemnitors, and the calculation of the collateral shortfall. Each of these employees reside in Houston. (*Id.*, ¶ 9).

In short, according to FCS, there are no nonparty witnesses to be considered in the § 1404(a) analysis. On the other hand, Zouvelos has maintained from the outset that many of the documents he would otherwise produce were destroyed in a flood in his office. In part because of that, he must rely on testimony from third-party vendors, employees, and indemnitors to explain the amounts in the collateral account. The crux of the dispute between the parties, therefore, centers on whether Zouvelos has sufficiently identified key nonparty witnesses located in New York.

The court agrees with FCS that many—if not most—of Zouvelos's identified witnesses are duplicative. But the record does not permit this court to conclude, as FCS argues, that none of these witnesses have testimony relevant to Zouvelos's defense. Zouvelos identifies many witnesses as

having knowledge about the bonds that underlie this contractual dispute. Some of the potential witnesses, such as Julio Pozo, are described as having knowledge about FCS bail-bond practices. And many of them appear to have knowledge about bail-bond practices generally in New York. Such information appears both relevant and potentially important to Zouvelos's defenses.

FCS's arguments that the main issue in the case is documenting the deductions and the bond forfeitures and that there is no need for any third-party witness fail to take into account two points. First, as noted, Zouvelos has maintained that he is unable to produce many of the relevant documents and must rely on other sources of proof, including testimony and documents to be subpoenaed from third-party vendors, former employees, clients, or bond indemnitors. Second, some of the witnesses are identified as having knowledge about FCS's business. FCS submits Krauss's affidavit to support its argument that Zouvelos "cannot guarantee the listed witnesses actually have personal knowledge of the intended topics." (Docket Entry No. 93, ¶ 11). But Zouvelos has listed many other witnesses. Although FCS's able counsel has demonstrated that there is good reason to doubt Zouvelos's credibility in many respects, there is an insufficient basis in the record to conclude that his list of potential witnesses is a "fraud on the court" and that those identified (aside from Krauss) do not in fact have personal knowledge about the topics described.

It is true that many, if not most, of these New York-based witnesses will not eventually testify at trial. Allowing all of them to testify would be duplicative, as FCS rightly points out. Nonetheless, some of these witnesses are likely to have testimony and documents that appear to be both relevant and, given the holes in the documents that Zouvelos has produced, important to Zouvelos's defenses. The witness list and the reasonable specificity with which the topics of testimony are described are sufficient to meet Zouvelos's burden of showing that there are key nonparty witnesses who are

9

located in New York, and whose testimony cannot be compelled at trial if the case remains in Texas.

In light of this conclusion, the court analyzes the relevant factors.

### A. Private-Interest Factors

The first private-interest factor, the relative ease of access to sources of proof, weighs in favor of transfer. Most of FCS's claims revolve around Zouvelos's recordkeeping and the documents he does have or had at one time but, according to him, can no longer produce because they were destroyed in a flood. Most of the relevant documents and physical evidence relating to them are located in New York. This factor supports transfer, even in an age of electronically available documents. *See Volkswagen*, 545 F.3d at 316; *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009). That is particularly true when, as here, a party may need to subpoena documents from nonparty witnesses appearing at trial.

The second factor, the availability of compulsory process to secure the attendance of witnesses, also weighs in favor of transfer. Zouvelos has identified at least some New York-based nonparty witnesses whose testimony is relevant and may be important to this action. These witnesses are outside this court's subpoena power. *See* FED. R. CIV. P. 45(b)(2)(B) (explaining that a subpoena may be served "outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection"). This factor supports transfer. *See Volkswagen*, 545 F.3d at 316–17; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (applying Fifth Circuit precedent and holding that "[t]he fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly").

The third factor, the cost of attendance for willing witnesses, also weighs in favor of transfer. Zouvelos has identified nonparty witnesses located in New York. It will be significantly more

convenient for them to have the case litigated in New York, where they reside. *See Volkswagen*, 545 F.3d at 317 (identifying the Fifth Circuit's "100-mile threshold" regarding this factor); *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009). By contrast, the only witnesses identified by FCS are FCS executives and employees. (*See* Docket Entry No. 93, Ex. A, ¶ 9). "[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial." 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851; *see also, e.g., Carr v. Ensco Offshore Co.*, Civ. A. No. G-06-629, 2007 WL 760367, at *2 (S.D. Tex. Mar. 8, 2007) ("Generally, the Court gives very little consideration to the convenience of witnesses who are still employed by Defendant." (collecting cases)). Because all of the identified nonparty witnesses reside outside Texas, this factor also favors transfer. *See Frederick*, 558 F. Supp. 2d at 704.

The fourth factor, all other practical problems that make trial of a case easy, expeditious and inexpensive, weighs slightly in favor of transfer. On the one hand, transfer may cause a delay in resolving this case. In addition, because of the acrimonious history between the parties and the numerous back-and-forth motions, this court is familiar with the issues; a new judge will not be. On the other hand, this case—though a year old—has not substantially advanced because it has been mired in discovery disputes. Furthermore, because of the substantial costs of appearing in person, this court has allowed Zouvelos and Mancini, who are representing themselves, to appear by telephone for pretrial proceedings, which has proven cumbersome and frustrating for all involved. The resolution of this case will on balance be served by a transfer to New York, where the pro se defendants can appear in person for court proceedings. This factor weighs in favor of transfer, though less so than the first three private-interest factors.

The private-interest factors, on balance, support transfer.

B.  **Public-Interest Factors**

The first public-interest factor, the administrative difficulties flowing from court congestion, is neutral. This court has previously recognized that "[t]he Houston Division [of the Southern District of Texas] is an exceedingly busy division." *In re Marquette Transp. Co. Gulf-Inland, LLC*, No. Civ. A. H-12-0623, 2012 WL 2375981, at *2 (S.D. Tex. June 21, 2012); *accord Choice Hotels Int'l, Inc. v. J. Bhagwanji, Inc.*, Civ. A. No. 4:11-cv-03768, at *3 (S.D. Tex. Dec. 30, 2011). The Eastern District of New York is similarly an extremely busy court. *See Federal Court Management Statistics: District Courts—September 2011*, UNITED STATES COURTS, http://www.uscourts.gov/Statistics/ FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx (last visited July 12, 2012) (showing that, as of September 30, 2011, the Southern District of Texas had 10,627 cases pending while the Eastern District of New York had 9,682 cases pending). The statistics do show that, on average, a civil case will go to trial more quickly in the Southern District of Texas than in the Eastern District of New York. *See id.* (showing that, as of September 30, 2011, the median time from filing to trial of civil cases in the Southern District of Texas is 20.1 months, while the median time in the Eastern District of New York is 32.9 months); *see also* 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854 (explaining that "what is relevant to the question of whether to transfer a case" under this factor "is that getting to trial may be speedier in another district because of its less crowded docket"). A trial may occur more quickly in the Eastern District of New York, given that Zouvelos will be able to appear in person at all pretrial hearings, as opposed to by telephone before this court, which will both aid and expedite the judicial process. And the work already done on the numerous discovery disputes is likely to shorten the time to trial. This factor, in sum, is neutral, weighing

12

neither in favor of nor against transfer.

The second factor, the local interest in having localized interests decided at home, is either neutral or slightly favors transfer. FCS's causes of action arise from bail bonds issued in New York, Zouvelos's alleged failures to maintain adequate records of those bonds and of the payments made to indemnitors and to third-party vendors, and, in general, to ensure proper return of collateral to indemnitors. In short, all of the actions leading to this lawsuit occurred in New York. On the other hand, FCS is a Texas company and Texas has an interest in the legal rights of its corporations. On balance, however, New York has a greater connection to this lawsuit than Texas. *See, e.g., Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, Civ. A. No. 3:10-CV-1825-L, 2010 WL 5287538, at *4 (N.D. Tex. Dec. 23, 2010) (finding this factor "either neutral or weigh[ing] slightly in favor of transfer" when the plaintiff's principal place of business is in the transferor forum but the acts giving rise to the lawsuit occurred in the transferee forum); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 771 (S.D. Tex. 2009) (finding this factor neutral in a commercial dispute between the plaintiff, a company based in the transferor forum, and the defendant, a company based in the transferee forum).

The third factor, the familiarity of the forum with the law that will govern the case, weighs slightly against transfer. This is a diversity case. Under the agreements' choice-of-law provision,[4] the contractual causes of action arise under Texas common law. It is true that "Texas district courts, naturally, will be the most familiar with Texas statutes and common law." *LED Sign Co. v. Hwee*, Civ. A. No. H-08-1463, 2008 WL 5114957, at *6 (S.D. Tex. Dec. 3, 2008). But this factor "is given

---

[4] "At the discretion of Company, the Agreement is to be interpreted in accordance with the laws of the State of Texas, where Company is based[.]" (Docket Entry No. 80, Ex. B, ¶ 29). FCS is assumed to have selected Texas law by filing suit in Texas.

13

significantly less weight when the case involves basic or sufficiently well-established, as opposed to complex or unsettled, issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state." 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854; *accord, e.g., Hawley v. Accord N. Am., Inc.*, 552 F. Supp. 2d 256, 261 (D. Conn. 2008); *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153–54 (D.D.C. 2008); *Frazier v. Comm. Credit Equip. Corp.*, 755 F. Supp. 163, 168 (S.D. Miss. 1991). None of FCS's causes of action entail legally complex questions of state law and FCS has not argued that Texas law on breach of contract differs markedly from New York law. This factor weighs only slightly against transfer. *See Hawley*, 552 F. Supp. 2d at 261.

On balance, the public-interest factors are neutral.

### C. The Parties' Contractual Forum-Selection Clause

As noted, the parties' forum-selection clause is properly considered in the § 1404(a) analysis. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988) ("The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences." ). But "the existence of a forum selection clause is merely one factor for the court to consider under § 1404(a)." *Merchants & Farmers Bank v. Marquette Equip. Fin., LLC*, Civ. A. No. 1:09CV11, 2009 WL 2767678, at *1 (N.D. Miss. Aug. 27, 2009); *see also Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*, 762 F. Supp. 2d 1023, 1029 (S.D. Tex. 2011) ("Although the forum selection clause is a significant factor in the transfer analysis, on it[s] own it is insufficient to justify transfer."); *Canvas Records, Inc. v. Koch Entm't Distribution, LLC*, Civ. A. No. H-07-0373, 2007 WL 1239243, at *5 (S.D. Tex. Apr. 27, 2007) (same). "A forum selection clause does not compel transfer if the factors in Section 1404(a) militate against transfer."

*Williamson-Dickie Mfg. Co.*, 762 F. Supp. 2d at 1029. And when "a forum selection clause is written in permissive rather than mandatory terms, federal judges understandably accord it less weight in the Section 1404(a) analysis." 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854.1.

The forum-selection clause at issue in this case reads, in relevant part: "The parties hereto do hereby consent and stipulate to the jurisdiction (at the discretion of Company) of the courts in the State of Texas, County of Harris or of the General Agent's home state for any action brought under this Agreement." (Docket Entry No. 80, Ex. B, ¶ 29). "For a forum selection clause to be exclusive [or mandatory], it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see also UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009) ("Mandatory forum-selection clauses that require all litigation to be conducted in a specified forum are enforceable if their language is clear."). The forum-selection clause in this case does not mandate Texas as the exclusive forum. The "at the discretion of Company" language allows FCS to bringing suit in any state. The language allowing suit in "the courts . . . of the General Agent's home state" expressly envisions a lawsuit in a New York court. The permissive forum-selection clause, which allows New York as a potential forum, does not change the balance of the relevant factors. Nor is the balance upset by FCS's choice of this Texas forum in which to bring its suit. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (explaining that "the plaintiff's choice of forum is clearly a factor to be determined but in and of itself is neither conclusive nor determinative"). The balance of the private-interest factors—particularly the relative convenience to nonparty witnesses, "the most important factor under § 1404(a)," *Mid-Continent Cas. Co.*, 629 F. Supp. 2d at 762—and the public-interest factors supports

transferring this case to the Eastern District of New York.

After careful consideration, this court concludes that Zouvelos has met his burden of establishing that the Eastern District of New York is clearly more convenient than this court. *See also Fin. Cas. & Surety, Inc. v. Mascola*, Civ. A. H-11-0120, 2011 WL 3020934, at *3–5 (S.D. Tex. July 22, 2011) (granting, under § 1404(a), motion to transfer a lawsuit brought in the Southern District of Texas by FCS against a bail-bond agent operating in New Jersey to the District of New Jersey).

### III. Conclusion

Zouvelos's motion to transfer venue, (Docket Entry No. 82), is granted. This action is transferred to the United States District Court for the Eastern District of New York. The remaining motions—FCS's motion to dismiss the amended counterclaims, Zouvelos's motion for leave to file second amended counterclaims, and FCS's motions to compel—are denied, but without prejudice to reassertion before that court. The court will enter a separate order of transfer.

SIGNED on July 13, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

16